FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 06 2009
P.M.
TIME A.M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
LAKHRAJ MONOHAR[1],

                Petitioner,

-against-

DENNIS CROWLEY, Superintendent of
the Sing Sing Correctional Facility,

                Respondent,
-------------------------------------------------------x

**MEMORANDUM and ORDER**

07-CV-4952 (SLT)

**TOWNES, United States District Judge:[2]**

In November 2003, petitioner Lakhraj Monohar was convicted in the Supreme Court of the State of New York, Queens County, of burglary in the third degree and two counts of criminal mischief in the fourth degree in connection with a November 6, 2003, incident in which various items in a closed Central Parking Systems parking garage were vandalized. In 2007, after exhausting his direct appeal, petitioner commenced this action by filing a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the instant petition for a writ of habeas corpus is denied.

## BACKGROUND

On the morning of November 6, 2003, Sheik Rahim, an employee of Central Parking Systems, arrived at work to discover that the Central Parking Systems parking garage on 165th Street and Archer Avenue, Queens, had been broken into. Rahim found that two security cameras, a cash register, and a telephone had been broken and that some sheriff's cars parked in the garage were also damaged. Petitioner's fingerprints were found on the dismantled telephone,

---

[1] Petitioner is referred to as both Lakhraj Manohar, Monohar, and Moar in the record. This Court will refer to him as Lakhraj Monohar, since this is how he refers to himself in his habeas petition.

[2] The Court gratefully acknowledges the assistance of a student intern, Sarah Vulcano of CUNY School of Law, in the preparation of this Memorandum and Order.

and he was subsequently indicted on one count of burglary in the third degree, four counts of criminal mischief in the fourth degree, and one count of petit larceny.

*The Trial*

In October 2005, petitioner went on trial before Justice Daniel Lewis and a jury. The trial lasted eight days, during which the prosecution called eight witnesses. None were eyewitnesses. The defendant also testified.

*The Prosecution Case*

Morounkeji Sogbein, an employee of Central Parking Systems, testified that on November 5, 2003, as on most days, the Central Parking Systems facility was open from 7:00 a.m. to 9:00 p.m. (Sogbein: T. 459).[3] There was one driving exit and entrance to the garage, as well as three stairwell exits and two cashier's booths, each of which contained a telephone (T. 470- 472). Each booth also had a security camera, which was mounted on the ceiling (Kawas: T. 485, 495, Rahim: T. 525). The surveillance video from the cameras was recorded onto a hard drive in the garage office. However, the security system maintained the video on the computer for only five days before it was automatically erased (T. 485, 488).

Several cars owned by the New York City Sheriff's Department were parked in the facility. At closing on November 5, 2003, there were also three abandoned cars in the garage, including one Oldsmobile (Sogbein: T. 461). Both phones and security cameras were working when Sogbein left the garage with Omar Barnes, another parking attendant, after locking up at 9:00 p.m. (Sogbein: T. 463-464, Barnes: T. 565, 567).

---

[3] Numbers preceded by "T" denote pages in the trial transcript. Numbers preceded by "S" refer to pages in the sentencing minutes.

2

Early in the morning on November 6, 2003, Johnny Kawas, supervisor of 20 Central Parking Systems parking facilities, including the facility in question, received a phone call informing him of an incident at the garage (T. 480). When he arrived at the garage at about 7:45 a.m. he observed that the two cashier's booths were damaged, that the lenses of both security cameras in the booths were broken, and that one of the cash registers was broken and no longer worked properly (T. 481, 483). The telephone in one of the booths was dismantled, and some windows and locks on the cruisers were broken (T. 484).

Kawas viewed the surveillance video and discovered that the security cameras had captured images of the perpetrator. However, because the system was new, he did not know how to download the video from the hard drive to a disk where it would be preserved (T. 487). He called the security system company to download the information, then took a single still photograph of the surveillance video with his digital camera (T. 488). The portion of the video recorded in the photograph indicates that it was recorded at 1:20 on the morning of November 6, 2003, and shows petitioner with a coat over his head reaching up towards the surveillance camera (T. 491). By the time the security company came to the parking facility, the footage had been automatically erased (T. 488).

Deputy Sheriff Andrew Peritz discovered damage to the sheriff's cars when he arrived to pick up his cars for work on November 6, 2003 (T. 606, 607). He testified that four sheriff's cars were damaged. A window in one vehicle was shattered and a computer console was almost ripped out. In the three other cars, door locks were broken (T. 607). Two police parking plaques had been removed from the vehicles (T. 608). Deputy Sheriff Peritz took photos of the scene,

then called the New York Police Department ("NYPD") to request that they send an evidence collection team (T. 610).

Police Officer Brian Eighmey of the Queens South Evidence Collection Team arrived at the parking garage at noon on November 6, 2003 (T. 570-572). Officer Eighmey dusted the interiors of the sheriff's cars for fingerprints. He also dusted the telephone, the cash register, and a counter in one of the cashier's booths (T. 572, 576). He recovered one latent fingerprint, from the end of the dismantled telephone, and sent it to the "latent print department" (T. 576, 577, 593).

Detective Jeffrey Katz of the 103rd Precinct Detective Squad was assigned to investigate the case (T. 591). On December 28, 2003, Katz received notification from the NYPD's latent print unit of a "latent print hit," presumably relating to the fingerprint lifted from the telephone (T. 593). When asked to define the term, "latent print hit," Katz implied that it meant the latent print had been matched, by computer, to a fingerprint contained in the NYPD's database, saying:

> [The] evidence collection team responded to the scene, they took fingerprints . . . . They took print lifts off numerous places inside the location. These lifts then go back to their unit where they, by computer, they match it up to other fingerprints (T. 593).

Defense counsel did not object to this testimony.

Katz testified that, after receiving notification of the "latent print hit," he conducted an investigation with respect to the whereabouts of an "individual"—presumably the person having the computer-matched fingerprints. On September 14, 2004, Katz arrested Lakhraj Monohar (T. 594). He took petitioner's fingerprints and sent the resulting fingerprint card, along with the latent print, to the NYPD's latent print unit (T. 598).

Police Officer William Umstead, an associate fingerprint technician in the latent print identification unit, testified as an expert in the field of latent print identification (T. 629). Umstead compared the latent print to the fingerprints on the fingerprint card and found that the latent print and petitioner's right index finger shared twelve characteristics (T. 637). He concluded that the latent print was from petitioner's right index finger (T. 641).

### *The Defense Case*

Following the close of the People's case, the defense moved unsuccessfully to dismiss the indictment for failure to prove a prima facie case. Defense counsel then called petitioner to testify.

Petitioner testified that at approximately 1:00 a.m. on November 6, 2003, he went to the Central Parking Systems garage to check on an Oldsmobile owned by his "affiliate," Johnny (T. 651). According to petitioner, he entered the garage through the open front gate and walked up the ramp directly to the Oldsmobile, without passing either of the cashier's booths (T. 653, 654). When petitioner attempted to leave the garage, however, the gate was locked, trapping him inside the garage (T. 654).

Petitioner admitted entering a cashier's booth, claiming that he did so in an attempt to telephone for help (T. 655). When he was in the booth, he put his jacket over his head because he was cold (T. 657). However, petitioner did not call for help. According to petitioner, the phone in the booth was not in working order and was in pieces (T. 655-656, 682-683).

Petitioner went to one of the stairwells and waited. After fifteen to twenty minutes, he realized that he could exit through a turnstile that he thought was an entrance (T. 656, 682). He

5

then left the garage. Petitioner acknowledged that he had been previously convicted of one felony and three misdemeanors (T. 657-658).

On cross-examination, petitioner testified that Johnny was an acquaintance who paid petitioner $10 to check on his Oldsmobile that evening (T. 701). Petitioner claimed that he was unable to give Johnny an update on his car because Johnny's number had been disconnected (T. 693-694). Petitioner never saw Johnny again (T. 694).

*Rebuttal Testimony*

After the defense rested, the People requested permission to call Kawas to testify about the contents of the surveillance video. Prior to trial, Justice Lewis ruled that this evidence was precluded by "the best evidence rule," but warned petitioner that he would reconsider his ruling "should the defendant take the stand and . . . open the door as to whether he in fact has indicated things that other parties are in rebuttal able to dispute" (T. 443-444). The People argued that the defendant opened the door by (1) testifying on direct examination that he went into the cashier's booths and found that the telephone had already been dismantled, and (2) by denying on cross-examination that he dismantled the telephone, broke open the cash register, or broke the cameras.

Petitioner objected to the proposed rebuttal testimony, arguing that it would be highly prejudicial (T. 707). Nonetheless, the trial court granted the People's motion. Kawas then testified that the surveillance video, which lasted about five minutes, showed petitioner using a screwdriver to pry open the cash register and dismantle the telephone (T. 723-724). Kawas further testified that immediately before the video ended, it depicted petitioner with a jacket over his head, reaching for the camera (T. 725).

*Verdict*

Following the summations and charge, the jury convicted petitioner of one count of burglary in the third degree, and two counts of criminal mischief in the fourth degree—one relating to the cash register, and the other relating to the security camera. Petitioner was found not guilty of petit larceny and of two other counts of criminal mischief in the fourth degree, both of which related to the sheriff's cars.

*Sentencing*

At sentencing in February 2006, petitioner was arraigned as a second-felony offender based on his 1998 conviction for attempted assault. Although petitioner had pleaded guilty to the attempted assault, petitioner challenged the constitutionality of that conviction on the ground that his plea had not been knowing and voluntary. Specifically, petitioner alleged that he had been under the influence of psychotropic drugs at the time of his plea.

Justice Lewis rejected the challenge, noting that the transcript reflected that petitioner was "alert and properly able to deal with any and all information given to him" (S. 37). After ruling that the plea was knowing and voluntary, Justice Lewis then proceeded to sentence petitioner as a second-felony offender to concurrent terms of two-and-one-half to five years for the burglary, four years for one of the counts of criminal mischief, and one year for the other count of criminal mischief (S. 38-39).

*Direct Appeal*

On direct appeal, petitioner raised three arguments. First, petitioner challenged the court's ruling that he had opened the door to Kawas's rebuttal testimony concerning the surveillance video. Second, petitioner argued that the trial court had improperly admitted Katz's

testimony that the computer had matched the latent print to petitioner's fingerprint because it implied that petitioner had a prior felony conviction. Third, petitioner argued that he was improperly sentenced as a second-felony offender.

On May 29, 2007, the Appellate Division, Second Department, unanimously affirmed the petitioner's conviction (*People v. Manohar*, 40 A.D.3d 1123 (N.Y. App. Div. 2007)). With respect to petitioner's first argument, the Court held that petitioner's testimony on direct examination opened the door to Kawas's rebuttal testimony concerning the surveillance video. Indeed, the court stated that petitioner had "further opened the door when, on cross-examination, he specifically denied the alleged criminal acts" (*Id.* at 1124). In response to petitioner's second argument—that the court erred in allowing Kawas to testify regarding the computer-matched fingerprint—the Court held that the contention was "unpreserved for appellate review" and "[i]n any event, . . . without merit" (*Id.*). With respect to petitioner's third argument, the Court held that petitioner was properly sentenced as a second-felony offender and "failed to sustain his burden of proof demonstrating that his previous plea of guilty was unconstitutionally obtained." (*Id.*).

Thereafter, petitioner applied for leave to appeal to the New York Court of Appeals. Justice Pigott denied that application on August 22, 2007 (*People v. Manohar*, 9 N.Y.3d 878 (N.Y. 2007)).

*The Habeas Corpus Proceedings*

In late October 2007, petitioner commenced the instant action by completing and filing a five-page form entitled, "Form for Use in Applications for Habeas Corpus under 28 U.S.C.

§ 2241" (the "Petition"). This form directed the user to "[s]tate concisely every ground on which you claim you are being held unlawfully," and to "[s]ummarize briefly the facts supporting each ground." Petition at ¶ 7 (emphasis omitted). The Petition provided petitioner with space in which to specify four grounds. For each ground, the form provided three blank lines on which to "state concisely" the ground for habeas corpus relief, then provided 14 or 15 blank lines on which to write "supporting facts."

Although petitioner wrote only in the sections marked "Ground one" and "Ground two," his writings allude to all three of the issues raised on direct appeal. On the three lines under the heading "Ground one," petitioner alluded to Justice Lewis's decision to admit Kawas's rebuttal testimony, arguing that the "Judge ruled D.A. could not present evidence, then after, Judge ruled District Attorney could present evidence." *Id.*, at ¶ 7(a). However, on the lines on which petitioner was supposed to write facts supporting Ground one, petitioner alluded to the two other arguments raised on direct appeal. Petitioner wrote:

> Counsel failed to object and preserved [sic] that the court erred in allowing the People to introduce evidence of a police detective's testimony regarding the defendant's computer-matched fingerprint left at the crime scene . . . . Defendant was improperly sentenced as a second felony offender as a result of a guilty plea entered at a time when under the influence of powerful mind-altering drugs. Prior plea was not entered knowingly, intelligently and voluntarily . . . .

*Id.*

In the three spaces under the heading "Ground two," petitioner asserted that his "due process right to a fair trial was compromised by erroneous rulings by the trial court." *Id.*, at ¶ 7(b). Although petitioner did not specify the "erroneous rulings" to which he referred, petitioner was presumably referring to the evidentiary rulings relating to the rebuttal testimony

9

and Katz's testimony regarding the fingerprints. In the section reserved for facts supporting Ground two, petitioner again alleged that he was "improperly sentenced as a second felony offender," and asserted that it was "clear that the Appellate Division, Second Department erred in its decision which affirmed the . . . judgment of conviction." *Id.*

In his opposition papers, respondent argues that petitioner raises only two grounds for habeas relief: that the trial court improperly admitted the detective's testimony regarding the computer-matched fingerprint and that petitioner was improperly sentenced as a second felony offender. However, in interpreting the Petition in this case, this Court is mindful that *pro se* submissions are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). A *pro se* plaintiff's complaint must be read liberally and interpreted as raising the strongest arguments it suggests. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). Since the Petition alludes to each of the three of the issues raised on direct appeal, this Court must construe the Petition as raising all three issues.

## DISCUSSION

### 1. Erroneous Admission of Rebuttal Testimony

Petitioner's first ground for habeas corpus relief is that his due process rights to a fair trial were violated by the trial court's decision to admit rebuttal testimony regarding what Kawas saw on the surveillance videotape. "In order to prevail on a claim that an evidentiary error deprived the defendant of due process under the Fourteenth Amendment [the defendant] must show that the error was so pervasive as to have denied him a fundamentally fair trial." *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985) (citing *United States v. Agurs*, 427 U.S. 97, 108 (1976)).

10

The standard for determining whether erroneously admitted evidence denied the defendant a fair trial is whether the evidence, "viewed objectively . . . was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Collins*, 755 F.2d at 19. To meet this standard, the erroneously admitted evidence, must be "crucial, critical, highly significant." *Id.*

In this case, petitioner's argument fails for two reasons. First, the trial court's decision was not erroneous. The Appellate Division expressly held that the Supreme Court properly admitted the rebuttal testimony on the basis that the defendant had "opened the door." *Manohar*, 40 A.D.3d at 1124. This Court cannot second-guess the Appellate Division's decision regarding state law, as "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Second, even if the trial court's evidentiary ruling had been erroneous, the error was not so crucial, critical, or highly significant as to deprive petitioner of his due process right to a fair trial. *See Collins*, 755 F.2d at 19. A still photograph from the surveillance video had already been introduced on the People's direct case, showing petitioner with his jacket over his head, reaching towards the very security camera which had been found broken the next day. Although Central Parking Systems employees testified that the garage had been locked at 9:00 p.m., petitioner admitted that he was inside the locked garage at 1:00 a.m. and his fingerprint was found on the dismantled telephone. Moreover, petitioner gave an explanation for his presence in the garage which the jury obviously found to be unpersuasive. He first claimed that an acquaintance had paid him $10 to check on a car, and then alleged that the acquaintance had disappeared and disconnected his telephone before receiving the update for which he had paid.

In light of this overwhelming evidence, Kawas's rebuttal testimony concerning the video was not "crucial" or "critical" to proving petitioner's guilt. Accordingly, even assuming this rebuttal testimony was erroneously admitted, its admission did not deprive petitioner of a fair trial.

## 2. *Erroneous Admission of Fingerprint Testimony*

Petitioner's second ground for habeas corpus relief is that Katz's testimony about his computer-matched fingerprint was erroneously admitted. In this case, the Appellate Division expressly stated that petitioner's "contention that the court erred in allowing the People to introduce evidence of a police detective's testimony regarding the defendant's computer-matched fingerprint left at the crime scene [was] unpreserved for appellate review" under New York Criminal Procedure Law ("CPL") § 470.05(2). *Manohar*, 40 A.D.3d at 1124. Petitioner does not argue that the Appellate Division erred in ruling that this argument was unpreserved, but asserts that defense counsel erred in failing to preserve the error for appellate review.

When a state prisoner has defaulted a federal claim in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim "is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), *see Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996). If a state court decision "explicitly invokes a state procedural bar rule as a separate basis for decision" on a federal claim, then a federal habeas court may not review the claim, absent cause and prejudice or a fundamental miscarriage

of justice, even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).

Section 470.05(2) of the CPL, which the Appellate Division cited, constitutes the State's contemporaneous objection statute. It provides that "[f]or purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court . . . is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction . . . ." The contemporaneous objection statute has been held to be an adequate state ground as it is "firmly established" and "regularly followed." *Richardson v. Greene*, 497 F.3d 212, 219 (2d Cir. 2007).

Although the Appellate Division also reached the merits of petitioner's claim, the court's express reliance on CPL § 470.05(2) forecloses habeas review unless petitioner can show either 1) cause and prejudice or 2) a fundamental miscarriage of justice. *See Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990); *see also Glenn*, 98 F.3d at 724-25. A petitioner can show cause for the default if some objective factor external to the defense impeded counsel's efforts to comply with or raise the claim. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Trial counsel's failure to raise a claim does not constitute "cause" for a procedural default, however, unless that failure rises to the level of ineffective assistance of counsel. *Id.* Moreover, even though ineffective assistance can constitute "cause," a claim of ineffective assistance generally must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. *Id.* In order to establish prejudice, a habeas petitioner must show not only that the errors at trial "created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494 (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)).

Petitioner has not demonstrated "cause and prejudice." First, petitioner has not alleged, and there is nothing to suggest, that any factor external to the defense prevented defense counsel from preserving the evidentiary argument regarding Katz's testimony. Defense counsel's failure to do so was not ineffective assistance because the Appellate Division has implied that petitioner's objection to Katz's testimony was "without merit," and that Katz's testimony was properly admitted. Moreover, even assuming that defense counsel's failure to preserve the argument rose to the level of ineffective assistance, petitioner never raised the ineffective assistance argument in state court, and therefore, cannot use it here to establish "cause." There is also no prejudice because the Appellate Division reached the merits notwithstanding the lack of preservation, and found petitioner's contention to be without merit.

There is also nothing to suggest that there has been "fundamental miscarriage of justice" in this case. To establish a "fundamental miscarriage of justice," petitioner must show that he is actually innocent through new, reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Here, petitioner has not introduced any evidence suggesting that he is actually innocent. Accordingly, the fundamental miscarriage of justice exception does not apply in this case.

Even if petitioner could show cause and prejudice or a fundamental miscarriage of justice, this Court could not grant habeas relief based on this evidentiary error. As noted above, the Appellate Division found the evidence regarding the computer-matched fingerprint was admissible. Moreover, the evidence was not crucial to the People's case but was admitted to solely explain why Plaintiff was arrested.

### 3. Erroneous Second-Felony Offender Adjudication

In his third ground for habeas corpus relief, petitioner seeks to challenge the constitutionality of his 1998 state-court conviction for attempted assault. Although this predicate felony served as the basis for sentencing petitioner as a second-felony offender, this prior conviction cannot be challenged in this proceeding.

"[O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid." *Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 403 (2001). "If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under [28 U.S.C.] § 2254 on the ground that the prior conviction was unconstitutionally obtained. *Id.* at 403-404. The Supreme Court has provided only one exception to this rule, permitting a habeas challenge to a predicate felony conviction in a case in which "there was a failure to appoint counsel in violation of the Sixth Amendment, as set forth in *Gideon v. Wainwright*, 372 U.S. 335 (1963)." *Id.* at 404.

Here, petitioner does not allege that the predicate felony conviction was obtained in violation of his Sixth Amendment rights. Instead, he argues solely that he did not knowingly plead guilty to the predicate felony because he was under the influence of drugs at the time. There is no evidence in the record that the defendant appealed his 1998 conviction for attempted assault, or brought a CPL § 440 motion challenging the constitutionality of this predicate felony.[4] Since petitioner did not pursue his state remedies with respect to the predicate felony

---

[4] Indeed, it seems unlikely that petitioner ever brought, or ever would bring, a CPL § 440 motion to vacate his plea. Petitioner could receive more jail time for the predicate felony if petitioner's guilty plea was withdrawn and the case went to trial.

15

conviction, that conviction is conclusively valid. Accordingly, petitioner may not challenge his sentence as a second-felony offender on the ground that his predicate felony conviction was unconstitutionally obtained.

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is denied and this case is dismissed. Because petitioner has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2)(1996), no certificate of appealability will be granted. The Clerk of Court is directed to enter judgment accordingly.

**SO ORDERED.**

/SANDRA L. TOWNES
United States District Judge

Dated: August 4, 2009
Brooklyn, New York